JACOB ROSENZWEIG, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

(GENERAL TERM, FIRST DEPARTMENT, JUNE, 1872.)

The rule is well established that it is not competent to impeach a witness by contradicting him as to facts disconnected with and collateral to the subject-matter at issue and on trial.

Accordingly, where a prisoner on trial for an abortion upon A. B., testified, as a witness on his own behalf, that he did not know N. W., a witness then present and pointed out to him, had never seen her, and had never procured an abortion upon her, and afterward N. W. was called as a witness, and, under objection, testified that the prisoner had procured an abortion upon her,—*Held*, that the admission of this testimony was error, for which the judgment should be reversed.

THE facts appear in the opinion.

Present—INGRAHAM, P. J.; LEARNED and LEONARD, JJ.

LEONARD, J. The defendant, Rosenzweig, was indicted and tried at the General Sessions of the Peace of the city of New York, for producing an abortion upon Alice Augusta Bowlsby, resulting in a conviction for manslaughter in the second degree, and his sentence to the State prison for seven years. A case of probable guilt was proven against the defendant, at the close of the testimony for the prosecution, when he was sworn and testified as a witness in his own behalf, and gave his explanation of the facts proven against him, as he was authorized to do by an act of the legislature passed in 1869 (chap. 678). On his cross-examination by the district attorney, he testified that he did not know Nellie Willis, a young woman present in court, then pointed out to him; that he had never seen her in his life, and that he had never procured an abortion upon her. Nellie Willis was afterward sworn on behalf of the people, and testified, against an objection and exception by the prisoner's counsel, that the prisoner had produced an abortion upon her person about two years before, by the use of instruments, at a time when she was three and one-half months advanced in pregnancy.

The admission of this testimony was an error, upon well-established authority.  It was not competent to impeach the prisoner as a witness, nor any other witness, by contradicting him as to facts disconnected with or collateral to the subject-matter at issue and on trial.   The prisoner was not indicted for producing an abortion upon Nellie Willis, nor was he notified or prepared to meet that charge.   No person can be required to come into court on a trial under an indictment for a specific offence, prepared to defend or explain other transactions not connected with the one on trial.   There is no reason for doubting, in this particular case, that Nellie Willis testified truly ; but her testimony might have been false, and, having been brought out unexpectedly, the prisoner could not be prepared for it, nor could he be expected, on the instant, to vindicate himself.   He would be wholly unable to meet it were the charge of Nellie Willis unquestionably fictitious.   Evidence of general good character would not relieve the prisoner from the stigma of the crime proved by Nellie Willis, nor restore the presumption in his favor which might otherwise have been created by his own evidence. Every person is presumed to be able to defend himself against evidence of general bad character for truth, but not so as to proof of particular acts of crime or misdemeanor.   The illegal evidence so admitted tended to damage the prisoner's case, by inducing a conviction in the mind of the jury, from the commission of the previous offence, that he had committed the crime for which he was then on trial.   No one can for a moment suppose that a person charged with the crime of murder should be convicted on proof that he had committed a murder two years before on another person.   The same principle applies to this case.   The admission of illegal evidence cannot be disregarded or excused upon the ground that the other evidence in the case was sufficient to justify a conviction.   The conviction must be had by legal evidence only. There would be no safeguard for innocence if this rule were to be disregarded.   It is in the highest degree important that justice should be sure and speedy, and that when a conviction

has been had for an offence fully proven, that the offender should not be able to escape on technical grounds, or for reasons not involving the merits of the subject of the indictment ; but it is far more important to the cause of public justice that a fair trial should be secured, and that no person should suffer by an illegal conviction. A disregard of the legal rules established for the attainment of truth on the trial of an action in a court is but a mockery of justice, and rapidly degenerates to the standard of lynch law.

The judgment must be reversed and a new trial ordered at the General Sessions.